| | |
|---|---|
| DISTRICT COURT, MORGAN COUNTY, STATE OF COLORADO<br>400 Warner Street, Fort Morgan, CO 80701 | DATE FILED: October 26, 2017 3:12 PM<br>FILING ID: 20AED686666FC<br>CASE NUMBER: 2017CV30084 |
| **JOAN UNREIN,**<br>Plaintiff<br><br>v.<br><br>**PHC-Fort Morgan, Inc., d/b/a COLORADO PLAINS MEDICAL CENTER, A Colorado Corporation,**<br>Defendant | ∆ COURT USE ONLY ∆ |
| Plaintiffs' Attorneys:<br>Kelli Riley, Esq., #44828<br>Jennifer Wadhwa, Esq. #44911<br>Riley Law LLC<br>2005 West 9th Street, Suite 6<br>Greeley, Colorado 80631<br>Phone Number: 970-515-5932<br>Kelli@rileylawllc.com<br>Jennifer@rileylawllc.com<br>FAX Number: 970-797-1226 | Case Number:<br><br><br><br><br>Division<br>Courtroom |
| **COMPLAINT** | |

Plaintiff Joan Unrein, by and through her counsel, Kelli Riley, and Jennifer Wadhwa, of Riley Law LLC, hereby files this complaint against PHC-Fort Morgan, Inc., d/b/a COLORADO PLAINS MEDICAL CENTER ("Defendant"). In support of this complaint, Plaintiff states the following:

### STATEMENT OF THE CASE

1. Plaintiff was an employee of Defendant. Following a medically-diagnosed disability, Ms. Unrein requested reasonable, available accommodations from her employer, which Defendant initially approved. Plaintiff worked under these reasonable accommodations, without issue, for nearly eighteen months, before Defendant unilaterally ended the accommodation with no notice nor explanation to Plaintiff. Plaintiff requested reinstatement of the original accommodation or, in the alternative, new accommodations. Defendant failed to engage in the interactive process and

Exhibit A

thereafter terminated Plaintiff's employment. Plaintiff brings claims for disability discrimination on the basis of an actual disability and retaliation.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff, Joan Unrein, is and was, at all relevant times hereto, a resident of the State of Colorado, and performed all work for Defendant in Morgan County, Colorado.

3. Defendant, CPMC, is and was at all relevant times hereto, a corporation organized and operating under the laws of the State of Colorado, with its principal place of business located at 1000 Lincoln Street, Fort Morgan, CO 80701.

4. Venue is proper because Defendant is a corporation that has a location in Fort Morgan, Colorado, C.R.C.P. 98(c)(1), Morgan is the county designated in the complaint, C.R.C.P. 98(C)(1) and this is an action arising from acts that were committed in Morgan County, C.R.C.P. 98(C)(5).

## FACTS

5. Defendant is an acute care rural hospital serving patients in Fort Morgan and the surrounding communities and is a subsidiary that is owned and operated by LifePoint Health, Inc., which operates numerous facilities across the country.

6. At all relevant times hereto, Defendant was and continues to be a covered entity and employer "engaged in an industry affecting commerce" within the meaning of the Americans with Disabilities Act, as amended, 42 U.S.C. § 1211(2), (5)(A).

7. At all relevant times hereto, Defendant was and continues to be a covered employer within the meaning of the Colorado Anti-Discrimination Act, C.R.S. § 24-24-401(3).

8. Defendant employed Plaintiff from April 2000 to 2014 as the Nutrition and Food Service Director. In February 2014, Plaintiff transferred to a Clinical Dietician position reporting to Tracy

2

Fisher. Plaintiff worked as a Clinical Dietician until her termination. Ms. Unrein's work schedule was reduced to thirty-two hours per week when she stepped down to the Clinical Dietician role in 2014. Plaintiff performed her job duties satisfactorily.

9.      On or about 2013, Plaintiff received a medical diagnosis, Vitelliform Macular Dystrophy, a permanent condition affecting her vision. Her condition deteriorated to the point in 2014 that, as a result of her condition, Plaintiff is legally blind and cannot drive under the laws of the State of Colorado.

10.     On or about October 2014, Plaintiff requested reasonable accommodations for her disability from Defendant.

11.     Plaintiff could accomplish her essential job functions with reasonable accommodations from Defendant, and Defendant would not be unduly burdened by any of the accommodations available to Plaintiff.

12.     Around the time of Ms. Unrein's request for accommodations in late 2014, Janet Brinkman, director of Human Resources, told Ms. Unrein, "you could just go on disability [benefits]" when discussing options for accommodations for her disability.

13.     On or about January 2015, Defendant agreed to accommodate Plaintiff's request for reasonable accommodations, which allowed her to work from home on occasion when she was not able to arrange for transportation to and from work and for additional lighting and magnifiers that would allow her to see her work. Defendant was not unduly burdened by these requests. Ms. Unrein received duplicate sets of equipment to perform all her work from home and in the office, as needed.

14.     Plaintiff continued to perform her job duties satisfactorily after the accommodation was agreed to and continued to perform her job duties satisfactorily up to and through the date that Defendant fired her.

15.     Soon after Plaintiff requested a reasonable accommodation, Defendant interviewed Amy Lofley for a registered dietician position in late 2014. During her interview, Mr. Fisher told Ms. Lofley that because of Ms. Unrein's "health problems, she would retire or resign" soon.

16.     Ms. Unrein had no plans to retire or resign anytime soon.

17.     On or about April 2016, Defendant notified Plaintiff it would no longer provide her with some of the reasonable accommodations it had been providing since 2015. Defendant informed Ms. Unrein she must henceforth report to work on campus, in person, five days per week, Monday through Friday, for at least 8 work hours per day.

18.     Plaintiff filed a complaint with the Defendant's ethics hotline in April 2016 and requested reinstatement of her accommodation, or, in the alternative, a request for Defendant to engage in the interactive process to identify reasonable accommodations of her disability.

19.     Defendant did not respond to Plaintiff's request to renew her previous accommodation and did not meaningfully engage in the interactive process.

20.      On or about June 13, 2016, Ms. Unrein requested an accommodation to continue her existing accommodations (working remotely as needed, but primarily working on site 32 hours per week), and to work remotely via telecommunication on the other three days of the week to provide coverage.

21.     Defendant sent a letter in August 2016 denying Ms. Unrein's request for accommodation to telecommute for all job duties. Ms. Unrein never requested to perform all duties by telecommunication.

4

22. Ms. Unrein began FMLA medical leave in August 2016 for an unrelated illness.

23. Ms. Unrein filed a Charge of Discrimination with the Colorado Civil Rights Division (CCRD) on November 1, 2016, alleging disability discrimination and retaliation for engaging in protected activity.

24. In January and February, 2017, Defendant indicated through counsel that it was not willing to allow Ms. Unrein to return to work unless she could report to work on campus, five days per week, for at least 8 work hours per day. Defendant also indicated that it would not engage in the interactive process at that time.

25. Defendant terminated Plaintiff's employment on or about March 27, 2017.

26. During Ms. Unrein's leave beginning in August 2016, Defendant hired per diem temporary workers to provide coverage three days per week for Ms. Unrein's position. Upon Ms. Unrein's termination in Spring 2017, a permanent employee was hired to work three days per week to replace Ms. Unrein's position.

## **FIRST CLAIM FOR RELIEF**

(Discrimination on the Basis of Disability-CADA)

27. Plaintiff hereby incorporates all allegations of the Complaint as though fully set forth herein.

28. Plaintiff is a member of a protected group, that is, she is or was, at the time of termination from employment, a disabled individual as defined by the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401(3), *et. seq.*

29. Plaintiff's disability, major vision loss, substantially limited her in one or more major life activities.

5

30. Plaintiff was otherwise qualified for the position she was performing and was performing her job in a satisfactory manner.

31. When Plaintiff requested the reasonable accommodations, including that which would allow her to work remotely on occasion, Defendant approved the request. These requests did not place any undue burden on Defendant.

32 Defendant stopped Plaintiff's accommodation in 2016 and requested that she perform all of her work in the office between 8:00 am to 5:00 pm, five days per week.

33. Thereafter, Plaintiff submitted a request for reasonable accommodations to return to the accommodations she previously had. Defendant never answered that request.

34. Ms. Unrein filed a second request for accommodations in June 2016, which was denied in writing on August 2016.

35. Ms. Unrein complained to Defendant's ethics hotline in April 2016 about the failure to accommodate her disability.

36. Plaintiff filed a Charge of Discrimination with the CCRD on or about November 1, 2016 based on illegal disability discrimination and retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act. She received a "right to sue" letter from the CCRD on or about July 28, 2017.

37. Defendant consciously and purposefully discriminated against Plaintiff because of her disability in violation of CADA by refusing to provide reasonable accommodations or even engage in the interactive process, and by discharging her from her employment.

38. Based on Defendant's knowing and willful failure to accommodate Plaintiff's disability, and Plaintiff's repeated requests for accommodation, Defendant took the adverse action of terminating her employment.

6

39. As a direct and proximate result of Defendant's termination of Plaintiff's employment, Plaintiff has sustained damages, including, without limitation, past and future wage and benefit losses, reputational damages, emotional distress, inconvenience, humiliation, and mental suffering.

## SECOND CLAIM FOR RELIEF

(Retaliation-CADA[1])

40. After Defendant notified Plaintiff that it would no longer allow her to work from home, Plaintiff submitted a request for reasonable accommodations to return to the accommodations she previously had. Defendant never answered that request.

41. Ms. Unrein filed a second request for accommodations in June 2016, which was denied in writing on August 2016.

42. Ms. Unrein complained to Defendant's ethics hotline in April 2016 about the failure to accommodate her disability.

43. Plaintiff filed a Charge of Discrimination with the CCRD on or about November 1, 2016 based on illegal disability discrimination and retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act. She received a "right to sue" letter from the CCRD on or about July 28, 2017.

44. Defendant retaliated against Ms. Unrein after she reported disability discrimination, requested accommodations, and filed a Charge of Discrimination by refusing to engage in the interactive process, refusing to accommodate her disability, and subsequently terminating her.

---

[1] Ms. Unrein is filing a charge for retaliation based on the termination of her employment contemporaneously with this complaint, and will amend this complaint once a Notice of Right to Sue is issued and her administrative remedies have been exhausted. In the interests of judicial economy and expeditious adjudication of her claims, and because the claims share intertwined and inseparable facts, she is pleading all claims in this complaint.

7

45. Plaintiff filed a second Charge of Discrimination on the basis of retaliation in violation of CADA on October 26, 2017 based on her termination in March 2017, and will amend this complaint once a notice of right to sue is issued as to the termination charge.

46. As a direct and proximate result of Defendant's retaliation and termination of Plaintiff's employment, Plaintiff has sustained damages, including, without limitation, past and future wage and benefit losses, reputational damages, emotional distress, inconvenience, humiliation, and mental suffering.

## THIRD CLAIM FOR RELIEF

(Discrimination on the Basis of Disability – ADA)

47. Plaintiff hereby incorporates all allegations of the Complaint as though fully set forth herein.

48. Plaintiff is a member of a protected group, that is, she is or was, at the time of termination from employment, a disabled individual as defined by the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12102(2).

49. Plaintiff's disability, major vision loss, substantially limited her in one or more major life activities.

50. Plaintiff was otherwise qualified for the position and she was performing her job in a satisfactorily manner.

51. When Plaintiff requested the reasonable accommodations, including that which would allow her to work remotely on occasion, Defendant approved the request. These requests did not place any undue burden on Defendant.

52. Defendant stopped Plaintiff's accommodation in 2016 and requested that she perform all of her work in the office between 8:00 am to 5:00 pm, five days per week.

8

53.     Thereafter, Plaintiff submitted a request for reasonable accommodations to return to the accommodations she previously had. Defendant never answered that request.

54.     Ms. Unrein filed a second request for accommodations in June 2016, which was denied in writing on August 2016.

55.     Ms. Unrein complained to Defendant's ethics hotline about the failure to accommodate her disability, and asked to reinstate the previous accommodations.

56.     Plaintiff filed a Charge of Discrimination with the CCRD on or about November 1, 2016 based on illegal disability discrimination and retaliation for engaging in protected activity in violation of the Americans with Disabilities Act of 1990. She received a "right to sue" letter from the CCRD on or about July 28, 2017.

57.     Defendant consciously and purposefully discriminated against Plaintiff because of her disability in violation of the Americans with Disabilities Act of 1990, as amended, by refusing to provide reasonable accommodations or even engage in the interactive process, and by discharging her from her employment.

58.     Based on Defendant's knowing and willful failure to accommodate Plaintiff's disability, Defendant took the adverse action of terminating her employment.

59.     As a direct and proximate result of Defendant's termination of Plaintiff's employment, Plaintiff has sustained damages, including, without limitation, past and future wage and benefit losses, reputational damages, emotional distress, inconvenience, humiliation, and mental suffering.

## **FOURTH CLAIM FOR RELIEF**

(Retaliation-ADA[2])

---

[2] Ms. Unrein is filing a charge for retaliation based on the termination of her employment contemporaneously with this complaint, and will amend this complaint once a Notice of Right to Sue is issued and her administrative

60.     After Defendant notified Plaintiff that it would no longer allow her to work from home, Plaintiff submitted a request for reasonable accommodations to return to the accommodations she previously had. Defendant never answered that request.

61.     Ms. Unrein filed a second request for accommodations in June 2016, which was denied in writing on August 2016.

62.     Ms. Unrein complained to Defendant's ethics hotline in April 2016 about the failure to accommodate her disability.

63.     Plaintiff filed a Charge of Discrimination with the CCRD on or about November 1, 2016 based on illegal disability discrimination and retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act. She received a "right to sue" letter from the CCRD on or about July 28, 2017.

64.     Defendant retaliated against Ms. Unrein after she reported disability discrimination and filed a Charge of Discrimination by refusing to engage in the interactive process, refusing to accommodate her disability, and subsequently terminating her.

65.     Plaintiff filed a second Charge of Discrimination on the basis of retaliation in violation of CADA on October 26, 2017 based on her March 2017 termination, and will amend this complaint once a notice of right to sue is issued.

66.     Based on Defendant's knowing and willful failure to accommodate Plaintiff's disability, and in retaliation for Plaintiff's repeated requests for accommodation, Defendant took the adverse action of terminating her employment.

67.     As a direct and proximate result of Defendant's termination of Plaintiff's employment, Plaintiff has sustained damages, including, without limitation, past and future wage and benefit

---

remedies have been exhausted. In the interests of judicial economy and expeditious adjudication of her claims, and because the claims share intertwined and inseparable facts, she is pleading all claims in this complaint.

losses, reputational damages, emotional distress, inconvenience, humiliation, and mental suffering.

## DOCUMENT PRESERVATION

68.     As part of discovery, Plaintiff will be requesting certain documents and information from Defendant. Please note the document preservation instructions attached hereto.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

1.      Awarding Plaintiff declaratory and/or injunctive relief as permitted by law and equity;

2.      Awarding Plaintiff all economic and non-economic damages;

3.      Awarding Plaintiff her compensatory damages, attorneys' fees and litigation expenses as provided by law;

4.      Awarding Plaintiff her pre-judgment, post-judgment and moratory interest as provided by law;

5.      Awarding Plaintiff statutory penalties as provided by law;

Respectfully submitted this 26th day of October, 2017.

                              RILEY LAW LLC

                              */s/ Kelli Riley*
                              Kelli R. Riley, Reg. #44828
                              Jennifer A. Wadhwa, Reg. #44911
                              2005 West 9th Street, Ste. 6
                              Greeley, Colorado 80631

                              *Counsel for Plaintiff*

## DOCUMENT PRESERVATION INSTRUCTIONS

Plaintiff will be requesting electronic and other documentary evidence during discovery in this matter. This evidence will be of critical importance and Plaintiff wants to ensure that the types of documentary and electronic evidence that will be requested during the course of discovery are preserved.

As you may be aware, "[w]hen a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents and of the possible consequences of failing to do so." Standard 10, Preservation of Documents, ABA Civil Discovery Standards (Aug. 2004). This duty "applies to information stored in an electronic medium or format…" Id. at Standard 29.

Various kinds of electronic data and other documents will be important in this lawsuit. The data

Plaintiff anticipates will be relevant includes, but is not limited to, the following:

- The portions of any database or system maintained or used that contains time stamps or other data, including timesheets and telephone records, relating to the hours worked by Plaintiff and putative opt-in plaintiffs and/or class members as well as their pay;

- Emails and other electronic and hard-copy documents pertaining to Defendants' decision to not pay the overtime premium and to not provide paid rest breaks;

- Emails and other electronic and hard-copy documents pertaining to Defendants' reliance on department of labor authority when deciding not to pay the overtime premium or to not provide paid rest breaks;

- Emails and other electronic and hard-copy documents pertaining to any audit or investigation performed by the department of labor;

- Emails and other electronic and hard-copy documents pertaining to the job duties performed by Defendants' employees, including Plaintiff;

- Emails and other electronic and hard-copy documents pertaining to the hours worked by Defendants' employees, including Plaintiff;

- Emails sent and received by Plaintiff, putative opt-in plaintiffs or class members, and their managers/supervisors;

- Emails and other electronic or hard-copy documents pertaining to Defendants' compliance with the Fair Labor Standards Act and/or state laws; and

- Emails and other electronic or hard-copy documents pertaining to Plaintiff and all other current or former employees. 6

12

This data, including all associated metadata, must be preserved. Therefore, Plaintiff requests that Defendants perform offline backups of any databases which contain information of the types identified above. Plaintiff also requests that Defendants perform offline backups of all current Microsoft Exchange (or other email) databases to external hard drives, preserving their native format. These backups should be done routinely from this point forward.

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Therefore, Plaintiff requests that Defendants take every reasonable step to preserve this information until the final resolution of this matter, and discontinue all data destruction activities, including but not limited to, backup tape recycling policies, any automatic email deletion functions, and refrain from disposing of any relevant hardware or data storage. In short, Plaintiff requests that the utmost care be taken in the preservation of all relevant electronic data, including metadata.